1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10
11
12
13
14

CORBIS CORPORATION,

Plaintiff,

vs.

AMAZON.COM, INC., *et al.*,

Defendants.

NO. CV03-1415L

ORDER REGARDING MOTION
FOR DEFAULT JUDGMENTS AND
DISMISSAL WITHOUT PREJUDICE

15    This matter comes before the Court on plaintiff's "Motion for Default Judgments Against

16 Defendants Famed and Framed, Inc., Iconographics, Carolyn Otwell, (d/b/a Matdiln.com), Pix

17 Poster Cellar, Wynnco.com; and for Dismissal Without Prejudice of Defendants Famous Faces,

18 Inc., Legends Memorabilia Inc., Posters Now, Sign Here Autographs, and HDS Productions"

19 (Dkt. # 265, the "Motion").  This Court previously granted  plaintiff's request for entry of

20 default under Fed. R. Civ. P. 55(a) against defendants Famed and Framed, Inc., Iconographics,

21 Carolyn Otwell (d/b/a Matdiln@aol.com), Pix Poster Cellar, and Wynnco.com (collectively, the

22 "Defaulted Defendants").  Plaintiff now requests that this Court enter a default judgment under

23 Fed. R. Civ. P. 55(b) against the Defaulted Defendants.  In addition, plaintiff requests that the

24 Court dismiss without prejudice defendants Famous Faces, Inc., Legends Memorabilia Inc.,

25 Posters Now, and Sign Here Autographs (the "Unserved Defendants").  For the reasons set forth

26

ORDER REGARDING MOTION
FOR DEFAULT JUDGMENTS AND
DISMISSAL WITHOUT PREJUDICE

1 below, plaintiff's motion is granted in part, denied in part, and deferred pending further
2 submissions by plaintiff.

3                                    **I. BACKGROUND**

4          On June 30, 2003, plaintiff filed a complaint alleging, among other things, direct
5 copyright infringement, violation of the Digital Millennium Copyright Act, false designation of
6 origin and unfair competition, trademark dilution, unfair competition under Washington's
7 Consumer Protection Act, R.C.W. 19.86.020, *et seq.*, and tortious interference with business
8 relationships against the Defaulted and Unserved Defendants.  After it had filed its complaint,
9 plaintiff attempted to serve all of the defendants.  Although it successfully served the Defaulted
10 Defendants, they failed to plead or otherwise defend and, on August 25, 2003, this Court issued
11 an entry of default under Fed. R. Civ. P. 55(a) against them.  After the entry of default, one of
12 the Defaulted Defendants, Iconographics, filed a submission with this Court.  Plaintiff attempted
13 to serve the complaint on the Unserved Defendants but, for various reasons, could not do so.  On
14 July 14, 2005, Corbis filed this Motion.

15                                    **II. DISCUSSION**

16 **A.      Request for Default Judgment.**

17          **1.      Standard for Entry of Default Judgment.**

18          A district court has discretion to enter a default judgment under Fed. R. Civ. P. 55(b)(2).
19 The Court may consider a number of factors, including: "(1) the possibility of prejudice to the
20 plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint,
21 (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material
22 facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying
23 the Federal Rules of Civil Procedure favoring decisions on the merits."  Eitel v. McCool, 782
24 F.2d 1470, 1471-1472 (9th Cir. 1986).

25          If necessary, the Court may conduct hearings "or order such references as it deems
26 necessary" to enable it to enter a default judgment.  Fed. R. Civ. P. 55(b)(2).  The scope of the

1  Court's inquiry extends to determining the amount of damages and establishing "the truth of any

2  averment by evidence," or making "an investigation of any other matter."  Id.

3        **2.      Claims Subject to Entry of Judgment.**

4        Although plaintiff makes a general request for entry of a default judgment, it is clear from

5  its motion that plaintiff only seeks default judgment on its claim that the Defaulted Defendants

6  directly infringed its rights under the Copyright Act.  The Motion only addresses the direct

7  infringement claim and, significantly, calculates damages based solely on that claim.

8  Accordingly, the Court will only address the propriety of entering default judgment with respect

9  to the direct infringement claim.[1]

10        **3.      Subject Matter Jurisdiction.**

11        In its Order Regarding Summary Judgment Motions this Court held that it "does not have

12  subject matter jurisdiction over an infringement claim until the Copyright Office grants the

13  registration application and issues a certificate of registration."  (Dkt. # 242 at p. 32).  Although

14  plaintiff has not addressed the issue of subject matter jurisdiction in its Motion, it is incumbent

15  on the Court to do so *sua sponte*.  See Watts v. Pinckney, 752 F.2d 406, 409 (9th Cir. 1985) (if

16  court lacks subject matter jurisdiction, any default judgment it issued would be void).

17        Of the images that Corbis claims were infringed by the Defaulted Defendants, it asserts

18

19        [1]There is some question regarding whether plaintiff would be entitled to default judgment with

20  respect to all of the remaining claims.  On December 21, 2004, this Court issued an Order Regarding
Summary Judgment Motions (Dkt. # 242) in which it granted summary judgment in favor of defendant

21  Amazon.com Inc. with regard to the false designation of origin and unfair competition, trademark
dilution, unfair competition under Washington's Consumer Protection Act, R.C.W. 19.86.020, *et seq.*,

22  and tortious interference with business relationships claims.  See Dkt. # 242 at pp. 38-43.  It is improper

23  to enter a default judgment against a defaulted defendant on claims on which a similarly situated
defendant has prevailed.  See In re First T.D. & Inv., Inc., 253 F.3d 520, 532 (9th Cir. 2001).  Here,

24  plaintiff has not attempted to distinguish defendant Amazon.com from the Defaulted Defendants, and the
extent to which the defenses raised by Amazon.com would apply to the Defaulted Defendants remains

25  unclear.

26

1  two copyright interests.  The first is the copyright interests of the photographers who took the

2  photos (the "photographer's copyright").  Corbis has retained the right to assert a photographer's

3  copyright interests through its respective agreements with the photographers.  The second

4  copyright interest is Corbis' own interest in the compilation of photographs contained in bulk

5  CD-ROM filings submitted to the Copyright Office (the "Corbis copyright").[2]  A number of the

6  images plaintiff lists as having been infringed do not include the photographer's copyright

7  registration.  Other images do not include a copyright registration for the Corbis copyright.  To

8  the extent that plaintiff claims a default judgment for copyrights for which Corbis does not have

9  a certificate of registration, its motion is denied.

10      **4.      Sufficiency of Evidence Supporting Entry of Default.**

11          Based on the evidence submitted in support of the Motion, the Court is unable to enter

12  default judgment.  To begin, plaintiff makes no distinction between damages for infringement of

13  the photographer's copyright and damages for infringement of the Corbis copyright.  As a

14  general rule, plaintiff's exclusive rights under the Corbis copyright only extend to "the elements

15  of compilation and editing that went into the collective work as a whole . . . and those

16  *copyrighted contributions* that have been transferred in writing to the owner by their authors."

17  H.R. No. 94-1476, reprinted in 1976 U.S.C.C.A.N. 5659 (emphasis added).  With regard to the

18  Corbis copyrights, it is not clear whether plaintiff seeks damages for infringement of the

19  elements of compilation and editing of the collective work or for infringement of the copyrighted

20  contributions of the collective work.  If plaintiff seeks damages for infringement of the elements

21  of compilation and editing, it has failed to make clear why a licensing fee for the contributed

22

23  _____

24      [2]Plaintiff has previously indicated that it also holds a derivative copyright interest in changes made
    to the photographs by its employees.  In its motion, however, plaintiff does not mention the derivative

25  work of its employees or indicate that it seeks judgment based on infringement of a derivative copyright.
    Accordingly, this Court will not address the potential derivative copyright interests in this Order.

26

ORDER REGARDING MOTION
FOR DEFAULT JUDGMENTS AND
DISMISSAL WITHOUT PREJUDICE                    -4-

1   work is the appropriate lodestar for determining damages.  If plaintiff is seeking damages only
2   for the copyrighted contributions, plaintiff fails to explain why it has included contributions for
3   which there is no copyright registration.  Without such information, the Court is unable to
4   determine which copyright interests have been infringed and, consequently, the amount of
5   damages that are appropriate.

6          Setting aside plaintiff's failure to distinguish between the collective copyrights and the
7   copyrights in the individual images, plaintiff has failed to meet its burden of sufficiently
8   establishing the extent of its damages.  See Geddes v. United Financial Group, 559 F.2d 557,
9   560 (9th Cir. 1977).  "Actual damages are defined as 'the extent to which the market value of a
10  copyrighted work has been injured or destroyed by an infringement.'"  U.S. v. King Features
11  Entertainment, Inc., 843 F.2d 394, 400 (9th Cir. 1988) (citing Frank Music Corp. v.
12  Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 512 (9th Cir. 1985)).  "Actual damages are usually
13  determined by the loss in the fair market value of the copyright, measured by the profits lost due
14  to the infringement or by the value of the use of the copyrighted work to the infringer."  Polar
15  Bear Productions, Inc.. v. Timex Corp., 384 F.3d 700, 708 (9th Cir. 2004) (internal citations
16  omitted).

17         Plaintiff has not provided any evidence of profits lost due to infringement or the value of
18  the use of the copyrighted work to the Defaulted Defendants.  Instead, plaintiff has attempted to
19  establish the fair market value of the copyright by reference to the license fees it would have
20  received if the Defaulted Defendants had properly licensed the images for distribution and sale.
21  In determining the appropriate licensing fee, plaintiff relies on the expert opinion of Mark A.
22  Roessler.  Mr. Roessler reviewed the images that had been infringed, consulted three reference
23  books regarding celebrity licensing, and applied "generally accepted principles that are used to
24  negotiate licenses of celebrity images in the industry."  Donlan Decl. at p. 63.  Mr. Roessler
25  attaches a monetary value for a licensing fee for each of the pictures that plaintiff claims have
26  been infringed by the Defaulted Defendants.  Plaintiff has added the amount of that fee that it

1  would have received and presented it as the total actual damages it should be awarded.

2  Although a plaintiff may argue that it is entitled to a lost license fee as actual damages,
3  see Sid & Marty Kroft Television Productions, Inc. v. McDonald's Corp., 562 F.2d 1157, 1174
4  (9th Cir. 1977); see also On Davis v. The Gap, Inc., 246 F.3d 152, 166 (2nd Cir. 2001), the Court
5  has some concerns with the manner in which plaintiff calculated that fee.  As the On Davis court
6  made clear, "the lost license fee can risk abuse.  Once the defendant has infringed, the owner
7  may claim unreasonable amounts as the license fee. . . ." Id.  As a result, the question when
8  determining damages according to lost license fees "is not what the owner would have charged,
9  but rather what is the fair market value." Id.  In determining fair market value, the Court does
10 not look to "the highest use for which plaintiff might license but the use the infringer made." Id.
11 at n.3.  Under the circumstances, "the proper inquiry was what price a willing buyer and a
12 willing seller would have agreed on for the actual use made by the defendant." Country Road
13 Music, Inc. v. MP3.Com, Inc., 279 F.Supp.2d 325, 331 (S.D.N.Y. 2003) (internal quotations
14 omitted).  The Court may "reject a proffered measure of damages if it is too speculative." Frank,
15 772 F.2d at 513.

16 Here, it appears as if Mr. Roessler has determined the fair market value based on a
17 presumed use of the celebrity images and not based on the actual use made by the defendants.
18 As Mr. Roessler concedes, "[a] fundamental component in negotiating the fee for use of a
19 celebrity is to articulate precisely the scope of what the party is receiving by virtue of the
20 agreement." Donlan Decl. at p. 64 (endnote omitted).  Mr. Roessler states that the exclusivity of
21 the license and "whether the grant would effectively preclude giving similar rights to any other
22 party" would effect the licensing fee. Id.  Exclusive licenses or licenses that preclude similar
23 uses "warrant the payment of premium fees." Id.  In addition, "whether the celebrity wishes to
24 associate with the proposed project" also affects the amount of the fee. Id.

25 Having established the significance of these factors, Mr. Roessler fails to determine how
26 each factor applies to the particular use made of the images by the respective defendants.

1    Instead, Mr. Roessler makes a blanket and unsupported assertion that the license fee applicable

2    to the images infringed by the Defaulted Defendants "warrants payment of premium advances or

3    guarantees" because "if a license was granted for the use of the image, the license would likely

4    be exclusive."  Regardless of whether an exclusive license may have been likely, this Court is

5    not convinced that it describes "the use the infringer[s] made" of the images.  See Trell v.

6    Marlee Electronics Corp., 912 F.2d 1443, 1446-47 (Fed. Cir. 1990) ("A particular fee is not the

7    correct measure of damages unless that which is provided . . . to [the] licensees for that fee is

8    commensurate with that which the defendant has appropriated").  There is no evidence to

9    suggest that the Defaulted Defendants use of the images was consistent with an exclusive

10   license.  See Bi-Rite v. Button Master, 578 F.Supp. 59, 60 (S.D.N.Y. 1983) (declining to rely,

11   for purposes of calculating a hypothetical license on an exclusive license where defendant's use

12   was consistent with a non-exclusive license).  Similarly, there is no evidence from plaintiff or

13   Mr. Roessler that the use made by Defaulted Defendants was akin to an exclusive license

14   because plaintiff was unable to license the images to other potential purchasers as a result of the

15   infringing use.  Without such evidence, measuring damages according to premium advances or

16   guarantees for an exclusive license is inappropriate.  See Frank, 772 F.2d 505, 513, (1985)

17   (holding that plaintiff had not provided sufficient evidence that infringement of a portion of a

18   play impaired "the prospects for presenting a full production of that play"); cf. Cream Records,

19   Inc. v. Jos. Schlitz Brewing Co., 754 F.2d 826, 827 (9th Cir. 1985) (evidence showed that

20   defendant's use of song in commercial "destroys its value to other advertisers for that purpose").

21        In addition, in calculating the licensing fees and subsequent royalties that would have

22   been generated, Mr. Roessler assumed the Defaulted Defendants would enter into a four-year

23   agreement.  See Donlan Decl. at p. 65.  Mr. Roessler does not justify the use of a four-year term,

24   nor is there evidence produced by plaintiff that any of the Defaulted Defendants infringed the

25   images over a four-year period.  Without evidence regarding the Defaulted Defendant's actual

26   use, reliance on such an extended term is inappropriate.  See Bi-Rite, 578 F.Supp. at 60

ORDER REGARDING MOTION
FOR DEFAULT JUDGMENTS AND
DISMISSAL WITHOUT PREJUDICE                    -7-

1 (refusing to rely on license for one-year term as basis for damages when defendant's infringing
2 use lasted only six weeks).

3          Finally, Corbis asserts that it "is in the business of licensing photographic and fine art
4 images on behalf of itself and the photographers it represents."  Motion at p. 3.  This Court finds
5 it noteworthy that Corbis chose not to base its damages on its own experience in licensing
6 images.  Although this evidence may not be dispositive, it certainly reduces the inevitable
7 speculation that goes into calculating actual damages for copyright infringement.  Where
8 "copyright owners are represented by agents who have established rates that are regularly paid
9 by licensees . . . establishing the fair market value of the license fee of which the owner was
10 deprived is no more speculative than determining the damages in the case of a stolen cargo of
11 lumber or potatoes."  On Davis, 246 F.3d at 167.  Notably, plaintiff does not even attempt to
12 explain why it eschewed the presumed wealth of evidence at its disposal and, instead, chose to
13 rely solely on Mr. Roessler's opinion.  Cf. Barrera v. Brooklyn Music, Ltd., 346 F.Supp.2d 400,
14 409 (S.D.N.Y. 2004) (plaintiffs hired expert to assess fair market value of license to use
15 infringed photograph because plaintiffs sell prints of their work through art galleries and were
16 "unfamiliar with the market for such licensed work").

17          When a court finds that "neither the infringer's profits nor the copyright holder's actual
18 damages can be proved, statutory damages are mandatory."  Russell v. Price, 612 F.2d 1123,
19 1129 (9th Cir. 1979), cert. denied, 446 U.S. 952 (1980).  Plaintiff, however, has failed to provide
20 the necessary information for awarding statutory damages.  In order to recovery statutory
21 damages, a copyright must have been registered before infringement.  See Polar Bear Prods., 384
22 F.3d 700, 708 (9th Cir. 2004).  Here, plaintiff has not provided the dates of registration of the
23 images or the dates on which the infringements occurred.  As a result, the Court cannot
24 determine which, if any, of the claimed infringements merit statutory damages.

25          **5.      Default Judgment as to Iconographics.**

26          In addition to the deficiencies set forth above, the motion for entry of default judgment

ORDER REGARDING MOTION
FOR DEFAULT JUDGMENTS AND
DISMISSAL WITHOUT PREJUDICE                    -8-

1   with respect to defendant Iconographics fails for other reasons.  Plaintiff is required to give
2   those defaulting parties who have appeared in the action notice of its intent to seek a default
3   judgment by sending "written notice of the application for judgment at least 3 days prior to the
4   hearing on such application."  Fed. R. Civ. P. 56(b)(2).  In addition, this Court's local rules
5   require that a motion for entry of default judgment against a party who has appeared be noted for
6   consideration seven judicial days after the motion has been filed (as opposed to the same judicial
7   day of filing for defaulted parties who have not appeared) and that all papers filed in support of
8   the motion must be served to the defaulting party's address of record.  See Local CR 56(b)(2).

9       Although plaintiff has made no assertions regarding whether the defaulted parties have
10  made appearances or otherwise participated in the litigation, the record suggest that one of the
11  Defaulted Defendants, Iconographics, has appeared in this action.  After default had been
12  entered, Jeff Gainey wrote a letter on behalf of Iconogrpahics to the Court (Dkt. # 41).
13  Mr. Gainey stated that he obtained copies of the poster containing the infringing image at a
14  collectibles show.  He indicated that he sold three of the posters for $5 to $10 each and would be
15  willing to reimburse plaintiff for the licensing fee that he owes.  He further indicated that he
16  could not afford a lawyer to represent him in Washington state and requested that the case
17  against him be dismissed.

18      Upon examination, Mr. Gainey's letter constitutes an appearance on behalf of
19  Iconographics.  Although Mr. Gainey's letter may not be the typical appearance expected of a
20  defendant, "[t]he appearance need not necessarily be a formal one."  Wilson v. Moore &
21  Associates, Inc., 564 F.2d 366, 369 (9th Cir. 1977).  Significantly, he submitted the letter directly
22  to the Court.  See Key Bank of Maine v. Tablecloth Textile Co., 74 F.3d 349, 353 (1st Cir.
23  1996) ("appearance in an action typically involves some presentation or submission to the
24  court").  What is more, Mr. Gainey responded to the allegations against him, asked the Court to
25  dismiss the claim, and indicated his interest in settling the dispute with plaintiff.  Based on Mr.
26  Gainey's letter, the Court concludes that Iconographics did demonstrate to this Court and to

ORDER REGARDING MOTION
FOR DEFAULT JUDGMENTS AND
DISMISSAL WITHOUT PREJUDICE                    -9-

1  plaintiff an intent to defend itself and, accordingly, has entered an appearance for purposes of

2  Rule 55.

3       Once Iconographics "'appeared' for Rule 55 purposes [it was] entitled to notice of the

4  application for default judgment under Rule 55(b)(2)." <u>Key Bank</u>, 74 F.3d at 354.  In addition,

5  under the local rules, plaintiff was required to note its default judgment for at least seven judicial

6  days after it had filed and sent Iconographics all the material in support of the motion.  The

7  record makes it clear that the motion was not properly noted as required by the local rules.

8  What is more, plaintiff has not asserted, nor can it be gleaned from the record, that

9  Iconographics was "made aware that a default judgment may be entered against [it]." <u>Wilson</u>,

10  564 F.2d at 369 (<u>quoting</u> 10 C. Wright & A. Miller, Federal Practice and Procedure § 2687

11  (1973)).  "[T]he failure to provide 55(b)(2) notice, if the notice is required, is a serious

12  procedural irregularity," <u>In re Roxford Foods, Inc.</u>, 12 F.3d 875, 879 (9th Cir. 1993) (quotations

13  omitted), that requires this Court to deny the motion for default with regard to Iconographics.

14       **6.    Request for Additional Information.**

15       Pursuant to Rule 55(b), the Court requests that plaintiff provide additional information to

16  assist the Court in determining which copyrights it claims have been infringed and what is a

17  sufficient amount of damages for the respective infringements.  In addition, if plaintiff seeks to

18  re-file its motion for entry of default judgment against Iconographics, it must provide evidence

19  that it gave Iconographics sufficient notice under the local rules and the Federal Rules of Civil

20  Procedure.  Plaintiff must submit the additional information to this Court by 4:30 p.m. on

21  Friday, October 7, 2005.  The Court will then review plaintiff's request for entry of default

22  judgment.  If necessary, the Court may request a hearing on the issue once the additional

23  information has been reviewed.

24       **7.    Plaintiff's Request for Injunctive Relief.**

25       The Court will defer ruling on plaintiff's request for injunctive relief until it has received

26  the additional information.

ORDER REGARDING MOTION
FOR DEFAULT JUDGMENTS AND
DISMISSAL WITHOUT PREJUDICE                  -10-

**B.      Motion to Dismiss Unserved Defendants Without Prejudice.**

Plaintiff's motion to dismiss Famous Faces, Inc., Legends Memorabilia Inc., Posters Now, and Sign Here Autographs without prejudice is granted.

### III.  CONCLUSION

For the foregoing reasons, the "Motion for Default Judgments Against Defendants Famed and Framed, Inc., Iconographics, Carolyn Otwell, (d/b/a Matdiln.com), Pix Poster Cellar, Wynnco.com; and for Dismissal Without Prejudice of Defendants Famous Faces, Inc., Legends Memorabilia Inc., Posters Now, Sign Here Autographs, and HDS Productions" (Dkt. # 265) is granted in part, denied in part, and deferred in part.  The Court GRANTS plaintiff's motion to dismiss the Unserved Defendants.  Famous Faces, Inc., Legends Memorabilia Inc., Posters Now, and Sign Here Autographs are DISMISSED WITHOUT PREJUDICE.  The Court DENIES plaintiff's motion for default judgment with respect to defendant Iconographics.  The Court DEFERS RULING on the motion for default judgment with regard to defendants Famed and Framed, Inc., Carolyn Otwell, (d/b/a/ Matdiln.com), Pix Poster Cellar, and Wynnco.com. Plaintiff is required to submit additional evidence pursuant to Section II.A.6, above.

The Clerk of the Court is directed to note this motion on the Court's calendar for Friday, October 7, 2005.


DATED this 2nd day of September, 2005.


_MM S Lasnik_
Robert S. Lasnik
United States District Judge

ORDER REGARDING MOTION
FOR DEFAULT JUDGMENTS AND
DISMISSAL WITHOUT PREJUDICE                    -11-